UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO: 2:26-mj-01215-DUTY |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| LEO GRILLO, | ) | Wednesday, March 4, 2026 |
| | ) | |
| Defendant. | ) | (5:33 p.m. to 5:59 p.m.) |

INITIAL APPEARANCE

BEFORE THE HONORABLE MICHAEL B. KAUFMAN,
UNITED STATES MAGISTRATE JUDGE

**APPEARANCES**:

| | |
|---|---|
| For Plaintiff: | AUSA KEVIN REIDY |
| | AUSA HAOXIAOCHAN CAI |
| | U.S. Attorney's Office |
| | 312 N. Spring Street |
| | Los Angeles, CA 90012 |
| | |
| For Defendant: | DFPD ADEN KAHSSAI |
| | Federal Public Defender's Office |
| | 321 East 2nd Street |
| | Los Angeles, CA 90012 |
| | |
| Court Reporter: | Recorded; CourtSmart |
| | |
| Courtroom Deputy: | James Munoz |
| | |
| Transcribed by: | Exceptional Reporting Services, Inc. |
| | 20079 Stone Oak Pkwy. Suite 1105-237 |
| | San Antonio, TX 78258 |
| | 361 949-2988 |

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**Los Angeles, CA, Wednesday, March 4, 2026, 5:33 p.m.**

**(Call to Order)**

**THE CLERK:** Calling case 26-1215-M, *United States of America versus Leo Grillo.*

Appearance, please.

**MR. REIDY:** Good evening, Your Honor. Kevin Reidy and --

**MS. CAI:** Hello.

**MR. REIDY:** -- Haoxiaochan Cai, on behalf of the United States.

**THE COURT:** Good evening, Counsel.

**MS. KAHSSAI:** Good evening, Your Honor. Aden Kahssai, on behalf of Mr. Gur --

**THE DEFENDANT:** Grillo.

**MS. KAHSSAI:** -- Grillo, who is present, in custody, Your Honor.

**THE COURT:** Good evening, Ms. Kahssai. And good evening to you, Mr. Grillo.

**MS. KAHSSAI:** Your Honor, before we proceed, the cuffs are bothering him. Is it okay, if -- can I request that it be removed, just for this hearing?

**THE COURT:** Marshal Service, any objection?

**(No verbal response)**

**THE COURT:** Thank you.

**THE DEFENDANT:** Thank you.

**EXCEPTIONAL REPORTING SERVICES, INC**

3

**(Defendant unshackled)**

THE DEFENDANT:  Oh, thank you.  Lifesaver.

THE COURT:  Okay, Mr. Grillo, we're here for your initial appearance on a complaint that's been issued against you in the Central District of California.  Are you all right?

THE DEFENDANT:  Yeah, yes.

THE COURT:  Okay.  Okay.  I'm going to start by reviewing some paperwork I received from you and your attorney.  Then I have some questions for you, and then we'll discuss your case.  Okay.

So first I received a financial affidavit indicating that you were asking the Court to appoint an attorney to represent you in this case.

Did you sign this form?

THE DEFENDANT:  Yes.

THE COURT:  Are all the statements on the form true to the best of your knowledge?

THE DEFENDANT:  Yes.

THE COURT:  The Court has reviewed the financial affidavit and finds the Defendant is entitled to the appointment of counsel.  The Court will appoint Ms. Kahssai from the Federal Public Defender's Office to represent the Defendant.

Now Mr. Grillo, as I said, you've been charged in a complaint.  In connection with that proceeding you have certain

4

statutory and constitutional rights.  The Court has received a statement of rights form that appears to be signed by you.

Did you sign this form?

**THE DEFENDANT:**  I did, Your Honor.

**THE COURT:**  Okay.  And before signing it, did you read the form or have it read to you?

**THE DEFENDANT:**  Yes, I did.

**THE COURT:**  Okay.  Do you have any questions about your rights?

**THE DEFENDANT:**  No.

**THE COURT:**  Okay.  Ms. Kahssai, are you satisfied that your client understands his rights?

**MS. KAHSSAI:**  Yes, Your Honor.

**THE COURT:**  Okay.  The Court finds that the Defendant has been advised of and understands his rights.

Mr. Grillo, have you received a copy of the complaint in this case?

**THE DEFENDANT:**  Yes, Your Honor.

**THE COURT:**  Okay.  Did you have a chance to read it, or have it read to you?

**THE DEFENDANT:**  I read it, yes, Your Honor.

**THE COURT:**  Okay.  Now I'm not asking you today whether you agree with the charges, but I would like to know whether you understand the nature of what it is the Government alleges that you did.

THE DEFENDANT:  I understand it, yes.

THE COURT:  Okay.  Ms. Kahssai, do you have any concerns about your client's ability to understand the charges?

MS. KAHSSAI:  No, Your Honor.

THE COURT:  Okay.  The Court finds that the Defendant has been advised of and understands the charges.

Pursuant to the Due Process Protections Act, the Court orders the Prosecution to comply with its discovery obligations under *Brady v. Maryland* and its progeny and is reminded the possible consequences of not doing so, including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt, referral to disciplinary authority and sanctions.

Does the Government understand its obligations and agree to comply?

MR. REIDY:  Yes, Your Honor.

THE COURT:  Thank you, Mr. Reidy.

Ms. Kahssai, is there a prelim waiver in this case?

MS. KAHSSAI:  No, Your Honor.

THE COURT:  Okay.  Just confirming.  Okay.  Then we can turn to the matter of detention or release.  The Court has received the Government's request for detention in this matter.

What is the Defense's position?

MS. KAHSSAI:  We're seeking release, Your Honor.

THE COURT:  Okay, very good.

6

What does the Government intend to proffer in support of its request for detention?

**MR. REIDY:**  Yes, Your Honor.  In support of its request, the Government would proffer the complaint and supporting affidavits as well as the pretrial services reports, along with its recommendation of detention.

**THE COURT:**  All right, very good.

And Ms. Kahssai, anything further to proffer?

**MS. KAHSSAI:**  No, Your Honor.  We would proffer the report, but not its recommendation.

**THE COURT:**  Okay, very good.  Why don't we turn to the party's argument then.

Mr. Ready?

**MR. REIDY:**  Thank you, Your Honor.  Your Honor, the Government is requesting detention based on risk of flight, danger to the community, and risk of obstruction of justice.

I'll start with the danger to community and the obstruction of justice prongs, which are based on the danger that Defendant poses based on the evidence of his direction of an -- of a kidnapping plot of a victim -- of the victim in this case, and other witnesses.  As well as, I'm sorry, as the threat that he poses to other witnesses.  The kidnapping plot only involved the victim.

**THE COURT:**  Mm-hmm.

**MR. REIDY:**  So as set forward in the complaint, the

Defendant hatched a plot to kidnap a woman who had sued his animal sanctuary for employment discrimination and had obtained a significant judgment against that sanctuary.  Though the Defendant was in the process of appealing that judgment, as shown by the complaint delegations and the, you know, the descriptions of the recordings that are set forth in the complaint.

He decided to take matters into his own hands by seeking out and finding someone to kidnap the Plaintiff and a family member of hers and hold them against their will to achieve a favorable litigation result.

The evidence against the Defendant as set forth in the complaint it includes two recorded meetings in which the Defendant confirmed his direction of the kidnapping plot.  On the recording, the Defendant was shown a fake photo of the victim in the case in which she was shown tied up with zip ties and with duct tape over her mouth and was told that the kidnappers had -- and the photo is actually provided in the complaint.  And was told that the kidnappers had the victim and her husband in custody after taking them against their will.

Instead of being horrified, the Defendant, as set forth in the quotations in the complaint, asked for additional details, such as did the kidnappers actually have the victim and her husband, were those the people shown in the photograph, he asked, would they, the kidnappers, still be able to bring

8

them to Mexico?  Also was concerned that the kidnappers had not left -- had not yet left Lancaster, because he was concerned that the victim's family would alert the sheriffs to their presence and perhaps the plot would be found out.

And during that -- the meeting, the most recent meeting that took place yesterday after being asked to give more money to the kidnappers, the Defendant had brought a checkbook and wrote a check for $10,000 in order to facilitate that.  And also in a previous meeting, the Defendant had written -- had sent a check for $20,000 to move forward with the kidnapping.  So we're talking about two confirmatory expressions of intent to move forward with the kidnapping from two, I think -- believe two separate bank accounts for a total of $30,000.

Defendant, also in the recording, also he spoke enthusiastically about how the kidnapping would benefit his civil case.  Noting that if his appeal were to succeed and the case were to be retried due to the kidnapping plot there would be no Plaintiff.  She would not be present.  And so he remarked that that would be helpful to him.

So the -- I think it's important to go through the evidence of the complaint just because that -- it shows a -- it's pretty -- it's, in the Government's view, compelling evidence of the Defendant's willingness and intent to resort to violence to achieve his goals in litigation.  And I think that

9

directly bears on the question that the Court has to answer in this hearing, in this portion of the hearing, which is the risk that Defendant poses to the victim if he's released.

If the Defendant was willing to resort to kidnapping, to resort -- to avoid civil liability, in the Government's -- I think it's not easy to jump to the logical conclusion that the Defendant's willingness to engage in such conduct would only be increased now that he -- the victim was is not only a counter-claimant in the civil suit, but also, you know, a potential witness in a criminal case against him.

So the risk of danger, and as well as obstruction related to the risk that the Defendant poses to victim one, that strongly supports an order of detention in this case.

And I think also it's important to note that it's not just victim one who's in -- at risk here, there's also a person identified as corroborating witness one, who I think is also a likely target of the Defendant's willingness to -- his instinct to use violence to gain the upper hand in litigation. And I think that's a risk that the Court should also take into account when deciding whether or not release is appropriate.

The risk -- yeah, the risk of danger that the Defendant poses to two separate members of the community, the risk of obstruction, witness tampering related to those individuals, that justifies an order of detention standing alone.

10

Also on the point of danger, Your Honor, the Defendant, when at the time of his arrest when he was discussing the kidnapping plot, he had two firearms on his person, one on each side. And the Pretrial Services Report, you know, it lays out the Defendant's statements about the veritable arsenal that he has at his disposal in two separate residences, one in Los Angeles County and another in Nevada.

So I think, you know, as the Court pointed out in an earlier hearing, the Defendant's accumulation of and access to those firearms should be pretty concerning to the Court.

I'm not exactly -- I can't -- I don't think there were a lot, I'm not sure if I can put an exact number on them, but I think, you know, at -- there was another case where there were 12 and I think we might be north of that number in this case. I think 32 pistols and one rifle is the final count set forth in the Pretrial Services Agreement.

I also want to point out to the Court that the Defendant does have a criminal history. I understand it's more limited than what the Court may see in other cases, but it's -- it is not nonexistent. And this is not the Defendant's first brush with the criminal justice system. He did receive a sentence that, you know, included a week of jail time.

And you know, the Defendant's prior run in with the law, it shows that Defendant, you know, would have difficulty following the law and lawful orders of this Court, such that

11

the Court could be reasonably assured that any conditions of release would assure the safety of the community, especially the two members of the community that the Government's most concerned about, as well as assure the Defendant's appearance in the case.

And I think also when analyzing the -- whether or not the conditions would reasonably assure the Court, I think it's important to note that if the Defendant were on home detention, electronic monitoring, some of the more stringent conditions that the Court imposes, I think that the offense that is set forth in the complaint could pretty easily be accomplished, even with those conditions.

The Defendant had the resources to find someone to do his dirty work for him and, you know, he coordinated using phone calls and in-person meetings at, you know, pretty anodyne locations, such as an equestrian center. And he also used encrypted messaging applications. I don't think any of these actions would have raised red flags to a supervising officer if he were on pretrial release. So I think that that -- those set of facts should concern the Court when deciding whether or not that's an appropriate result here.

The reality is, Your Honor, that the Government -- there's a decent amount of luck involved, that the person that the Defendant reached out to reached out to us. You know, and the Government has to be, and I hope the Court is also

12

concerned, that if the Defendant were released, that we may not be as lucky, you know, in the likely event that there's another time.

And I think we're particularly pessimistic about our chances of catching up to the Defendant, given his well-documented surveillance consciousness, his preference for encrypted messaging apps and in-person meeting with accomplices.  You know, these sorts of -- that kind of awareness that the Defendant has exhibited makes things difficult for law enforcement and certainly for Pretrial Services, for the Pretrial Services Officer to detect any unlawful activity that may occur while on pretrial release.

Also, Your Honor, I think that the Defendant, at least based on this record, does pose a flight risk that I think would warrant detention as well.  He is looking at a significant sentence based on the current charge.  The base offense level for a kidnapping offense is 32, you know, which I believe puts him in a guideline range of around 10 years in custody.

He is, just based on the allegations of the complaint, his ability to cut five figure checks, you know, but -- from two separate accounts, I think he is a man of means and combined with a powerful incentive to flee, that sort of wherewithal and access to funds should concern the Court from a flight risk perspective.

13

And I think also the risk of nonappearance is augmented by the lack of verified information in the Pretrial Services Report.  The bail of resources proffered is just an unsecured bond from Defendant.  And I think also there's a tension at the -- and that's being, you know, the most forgiving I think perhaps an outright contradiction is probably the better term for it, for the Defendant's use of, you know, writing of checks from two separate bank accounts to fund the kidnapping, while also claiming in the Pretrial Services Report that his only sources of income are Social Security.  And saying that, you know, he has -- not being forth right about the number of assets that he has from a property perspective, I think he declined to address, you know, the properties that he owns.

So I think that sort of withholding from Pretrial Services and, you know, bordering -- borderline at least contradiction, but in the Government's view deception, should also concern the Court when deciding whether or not the flight risk justifies detention in this case.

For all these reasons, Your Honor, the Government respectfully requests detention based on risk of flight, danger to the community and risk of obstruction of justice.

THE COURT:  Okay.  Thank you, Mr. Reidy.

MR. REIDY:  Thank you.

THE COURT:  Just to confirm one thing.  This is not a

presumption case?  These charges don't trigger a presumption?

**MR. REIDY:**  It is not, Your Honor.  I think the --

**THE COURT:**  Okay.

**MR. REIDY:**  -- presumptions for a crime of violence and under the -- as that term is defined under the statute, and I believe attempted kidnapping does not qualify technically, but --

**THE COURT:**  Okay.

**MR. REIDY:**  -- in the Government's view, what we're talking about here is a violent crime, something that, you know, does pose a risk to --

**THE COURT:**  Understood --

**MR. REIDY:**  -- the under --

**THE COURT:**  -- that -- the point, I just -- I didn't see it checked on the notice of, so I just wanted to --

**MR. REIDY:**  Yes, Your Honor, --

**THE COURT:**  -- confirm that --

**MR. REIDY:**  -- that's why.

**THE COURT:**  -- is in fact the case.  Okay.

**MR. REIDY:**  Thank you.

**THE COURT:**  Ms. Kahssai?

**MS. KAHSSAI:**  Yes, Your Honor.  Thank you.  Your Honor, as the Court noted, this is not a presumption case.  So there is a presumption of release.  And so really the burden to prove by clear and convincing evidence that he is not a danger

15

to the community is on the Government, and that he - that he is not a flight risk is on the Government.

I will start with what the Government focuses on the most, which are the allegations in this case.  As the Court know, the allegations and the weight of the evidence is the least important factor for the Court to consider.  And while the allegations are serious, and Mr. Grillo does take it as serious, they're allegations, at the end of the day.  And he is presumed innocent.  And he will want his day in Court to -- for the Government to prove, beyond a reasonable doubt, that he did these things.

One of the things, one of the pieces of evidence the Government focuses on is the corroborating witness.  And I think it's the very first page -- the very second page of the complaint, this corroborating witness is a target of a separate FBI investigation into alleged fraud.  So this person, his credibility -- the person's credibility, is already something that we would put into question.

Additionally, Your Honor, I think that's about it for the allegations.  I will move on to the other factors.  I'll start with risk of flight, and why Mr. Grillo is not at risk of flight in this case.

Your Honor, he is a resident of California and has been for almost 50 years, 48 years, since 1977.  He is of old age, he is 77 years old.  He has significant family ties here.

His two daughters, his ex-wife, and his son-in-law, who is present in Court today, all live here, as well as his grandchildren.  He has lived at the -- at his current residence since 1991.

He is the owner and founder of the nonprofit Delta Rescue Organization, as the Government noted.  He is employed. He's self-employed by his own production company called Paws of the Earth Production.  And he's had that company for 20 years.

His son is willing to serve as a third party custodian.  He has an expired passport, and in fact, he has not left the country since he was 25 years old, so for a very, very long time.  And of course, he's willing to give up his expired passport to Pretrial Services.

Your Honor, he also has medical issues.  He has a heart condition that he takes medication for, and he has high blood pressure, which he also takes medication for.  He is under the supervision of a doctor for that.

And then as far as danger, I'll address his lack of criminal history first.  He has one misdemeanor conviction from 2005.  It is old, it is dated, and it is a violation of a local ordinance, Your Honor.  Nothing what so -- nothing remotely dangerous or violent about that.  He has no history of alcohol use or drug use.

And then I know the Government mentioned the firearms.  Your Honor, he has a permit to -- he had a permit to

possess those firearms.  It's not like the other case that this Court saw earlier today.  That person, I believe, was a convicted felon.  And moreover, Your Honor, he's willing to give up his right to possess those firearms during the pendency of this case.  So if the Court orders it, he will do it.

I will also note that he was compliant at the time of the arrest.  He didn't make a fuss.  He didn't fight with the agents.  He submitted to the arrest.

And then I will just note for the Court, Mr. Grillo is open to any conditions that the Court believes will mitigate danger or nonappearance.  We don't believe he's a risk of nonappearance whatsoever.  But if the Court is concerned about danger, he is willing to be restricted just to this district, Central District of California.  He is willing to put an ankle monitor on, he is willing even to have no contact order for whoever the Government believes is risk here, and any other condition that the Court believes is necessary.

And with that, Your Honor, I will submit.

**THE COURT:**  Okay.  Thank you, Ms. Kahssai.  Thanks to both Counsel for their presentations here today.

I am going to order the Defendant's detention.  I think the Government has met its burden by clear and convincing evidence to show the Defendant is a danger.

I do appreciate the point, Ms. Kahssai, that the weight of the evidence is given the least amount of

18

consideration under governing law here.

I think the issue here is, number one, the weight of the evidence appears to be quite strong. And number two, a lot of the allegations that go to the weight of the evidence also go independently to a risk of danger here.

The Court is concerned about the Defendant's access to firearms and resources that would allow him to potentially put other witnesses in this case and in his civil case at further risk.

And also the Court is frankly concerned about his level of sophistication. This is somebody who has very -- proven himself, quite adept at using technology surreptitiously. And that makes the possibility of managing the risk around him exceedingly difficult.

And so given the allegations here, as well as independently, I think as to their indication of flight risk, I do think this is an exceptional case where the Government has met its burden by clear and convincing evidence as a danger.

The Court is also concerned about a risk of flight here. The sentencing exposure is not that extreme, but given the seriousness of the charges here and the fact that he has access to funds, some funds seemingly, and again his level of sophistication makes it likely that he could evade whatever reasonable conditions that would be imposed. At least given the sort of package conditions that I see here today, I don't

19

see enough that would ensure the Court that he would be likely to show up for future proceedings.

So the Court is going to order the Defendant's detention pending further proceedings.

Ms. Kahssai, you, of course, can renew your application before the District Court Judge assigned to this case and see if they disagree.  But from where I sit, I do think the Defendant's detention is warranted pending further proceedings in this matter.

With that, I will ask my courtroom Deputy, Mr. Munoz, to please advise as to the next states in this matter before the District Court.  And there's been no waiver of freedom here, correct?  Yeah.  So --

**(No audible response)**

Okay, you're right.  Sorry, the next state's before the magistrate.

**(Pause)**

**THE COURT:**  Just look at the calendar again.

**(Pause)**

**THE CLERK:**  Preliminary Hearing is set for March 10 at 1:30 p.m.

**MR. REIDY:**  Your Honor, I apologize.  I believe we get two weeks' worth of preliminary hearing dates?

**(No audible response)**

**THE COURT:**  I assume the Government doesn't intend to

20

proceed with a prelim here?

MR. REIDY:  We do, Your Honor.  We generally -- the court's given us 14 days when the Defendant is detained --

THE COURT:  Yeah.

MR. REIDY:  -- to obtain an indictment.

THE COURT:  Okay.

MR. REIDY:  Thank you, Your Honor.

THE CLERK:  March 18 at 10:00 a.m.

(Pause)

THE COURT:  Anything further from the parties on this matter?

MR. REIDY:  Your Honor, I apologize.  The post-indictment arraignment's typically three weeks after the date of detention.  I'm just wondering if we could get that date as well.

THE COURT:  Do we set that as well?

THE CLERK:  This case is (indisc.)?

THE COURT:  No, this is a complaint.

(Pause)

THE COURT:  No.

THE CLERK:  The Preliminary Hearing's set for March 17, 2026 at 11:30 a.m.  Post-Indictment Arraignment's set for March 23, 2026 at 11:30 a.m.

MS. KAHSSAI:  Can I get that date one more time, I'm sorry.

21

**THE CLERK:** Preliminary Hearing set for March 17, 2026 at 11:30 a.m., Post-Indictment Arraignment's set for March 23, 2026 at 11:30 a.m.

**THE COURT:** Counsel, anything further on this matter?

**MR. REIDY:** No, Your Honor, thank you.

**MS. KAHSSAI:** No, Your Honor, thank you.

**THE COURT:** All right.  Thanks to both Counsel and good luck to you, Mr. Grillo.

**FEMALE SPEAKER:** Your Honor?

**(Inaudible comments)**

**THE COURT:** Yeah, just to clarify for the parties, the initial date that Mr. Munoz mentioned for the prelim hearing, it's the second two dates that he proposed.  I think the parties are clear.

**MR. REIDY:** Yes, Your Honor.

**THE COURT:** It's the 17th for the prelim hearing and then the PIA --

**MS. KAHSSAI:** The 23rd.

**MR. REIDY:** Understood, Your Honor.

**THE COURT:** Okay.

**MR. REIDY:** Thank you, yes, I --

**THE COURT:** I think the parties understood.

**MR. REIDY:** -- I appreciate it.

**THE COURT:** All right, very good.

**(This proceeding adjourned at 5:59 p.m.)**

22

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    March 30, 2026

         **Signed**                                                    **Dated**

*TONI HUDSON, TRANSCRIBER*