LAW OFFICES OF JAMES E. BLATT

16501 Ventura Boulevard

Suite 400

Encino, California 91436

Telephone: (310) 385-8066

Facsimile: (310) 385-5932

E-mail: J.Blatt@jamesblatt.com

James E. Blatt, Esq.  (SBN 56571)
Attorneys for Defendant,
LEO GRILLO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 26-CR-00146-GW |
| PLAINTIFF, | |
| VS. | DEFENDANT GRILLO'S MOTION TO BE ADMITTED BAIL PENDING TRIAL PURSUANT 18 U.S.C. 3142 ET SEQ.; EXHIBITS |
| LEO GRILLO, | |
| DEFENDANT | |

TO THE HONORABLE A. JOEL RICHLIN, AND TO ASSISTANT UNITED STATES ATTORNEYS HAOXIAOHAN CAI AND KEVIN BUTLER:

COMES NOW the Defendant, Leo Grillo, by and through his undersigned counsel and files this his Motion for Pre-Trial Release and as grounds therefore would show.

This motion is based on the following items: the attached memorandum of points and authorities, the attached Exhibits, any and all filed and records in this

1

case, and, last, on such additional evidence or argument as may be presented to the court at or before the hearing on this matter.

Date: July 16, 2026                    Respectfully submitted,


                                        /S/ James E. Blatt
                                       JAMES E. BLATT
                                       Attorney for Defendant
                                       LEO GRILLO

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Grillo hereby submits the following MEMORANDUM OF POINTS AND AUTHORITIES in support of his motion for release on bond.

I.

## INTRODUCTION

The Bail Reform Act strongly favors release under the least restrictive conditions that will reasonably assure appearance and community safety. See 18 U.S.C. § 3142(c). Although Mr. Grillo was previously ordered detained, significantly changed circumstances now justify reconsideration. Mr. Grillo now has substantial real property available to secure a meaningful appearance bond. Additionally, Mr. Grillo's medical condition has deteriorated, creating compelling humanitarian considerations while also reducing any risk of flight or danger. Because these developments were unavailable at the original detention hearing, reopening is appropriate under § 3142(f).

Mr. Grillo is a 77 year old United States Citizen and he has not left the country since he was in his twenties. Mr. Grillo has dedicated his life to his work in animal rescue. In 1981, Mr. Grillo started a nonprofit organization called, Dedication and Everlasting Love to Animals (D.E.L.T.A.), names after his first rescue dog. Mr. Grillo is extremely passionate about rescuing abandoned dogs and other animals, who would likely be killed if not taken care of by DELTA. Mr. Grillo's organization owns and operates a 120 acre property in Acton, CA. This is an amazing property that is a sanctuary for rescue dogs and other animals. Mr. Grillo has dedicated his life to this animal sanctuary and it is his primary passion. The organization operates solely on donor contributions. Mr. Grillo's ability to bring in donor contributions is a large part of the organization's success, and his incarceration has hindered his ability to participate in obtaining contributions,

3

which has impacted the animal sanctuary. Since Mr. Grillo's incarceration, donations have been down approximately 80 percent.

## II.

## ARGUMENT

Under 18 U.S.C. § 3142(f)(2)(B):

"The hearing may be reopened...if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release."

If detention was ordered by a magistrate judge, the district court reviews the detention decision de novo under 18 U.S.C. § 3145(b). The Bail Reform Act requires detention only where no condition or combination of conditions can reasonably assure appearance and community safety—not absolute certainty.

## III.

## NEW INFORMATION WARRANTS REOPENING

A. Defendant can secure release with significant real property

Mr. Grillo's company, The Pointe, LLC, is the owner of a property in Acton where he resided prior to his arrest in this matter. The home has a value of $965,805, and is owned free and clear. (See Exhibit A: Title report) Mr. Grillo is the manager or managing partner of The Pointe, LLC, and he is willing to pledge the entire value of the property as collateral. (See Attachment B: Articles of Incorporation for The Pointe, LLC)

///

///

4

B. <u>Defendant's health condition has declined since his incarceration four months ago</u>

Prior to his arrest in this matter, Mr. Grillo was under the care of his cardiologist, Dr. Adel El-Bialy. (See Exhibit C: Letter from Dr. El-Bialy) Dr. El-Bialy has been Mr. Grillo's cardiologist since 2011 when he suffered a heart attack and underwent placement of a coronary stent in the main artery of his heart. Dr. El-Bialy has managed Mr. Grillo's care since this time. Dr. El-Bialy explained that he normally sees his patients every six months, but he sees Mr. Grillo every two weeks and Mr. Grillo faxes Dr. El-Bialy his blood pressure results every week, which has led to Dr. El-Bialy adjusting Mr. Grillo's medication nearly every week throughout his care. Dr. El-Bialy explained that this unusual close level of supervision has been medically necessary due to the complexity and instability of Mr. Grillo's cardiovascular disease. Mr. Grillo's diagnoses include: Coronary artery disease, status post myocardial infarction (2011) and stent placement, Ischemic cardiomyopathy with chronically reduced cardiac function, congestive heart failure, significant cardiac arrhythmias, and Labile hypertension, with severe and unpredictable blood-pressure swings. Each of these conditions are potentially life-threatening, and taken together, they make Mr. Grillo a high-risk cardiac patient who requires continuous, individualized medical management. Dr. El-Bialy also explained that Mr. Grillo is sensitive to cardiac medications and normal patient doses of medications can have significant medical consequences, like dropping his blood pressure. Due to this, it is not safe for his medication regimen to be managed by a clinician that is not familiar with his individual response to medications. Dr. El-Bialy also explained that Mr. Grillo's arrhythmias are a particular concern because they can occur without warning and are capable of stopping his heart. This requires him to have close monitoring and the ability to be

promptly evaluated when these systems occur. On May 14, 2026, Mr. Grillo missed an appointment for a full cardiac evaluation due to his detention. This is a medically necessary evaluation and should occur as soon as possible. Dr. El-Bialy opined that Mr. Grillo cannot receive the level of cardiac monitoring and individualized management that he requires inside a custodial setting. Mr. Grillo requires the care of Dr. El-Bialy to manage his cardiac conditions. Continued incarceration placed Mr. Grillo as substantial risk of a life-threatening cardiac event, including sudden cardiac death from arrhythmia, hypertensive crisis, or decompensated heart failure.

Since Mr. Grillo's incarceration his health has significantly declined. While in custody, Mr. Grillo has lost 26 pounds, he is constantly dizzy and has tachycardia episodes at least two or three times a day. This is when Mr. Grillo's heart begins to race. These episodes require Mr. Grillo to lie down and rest immediately until the symptoms subside. Defense counsel's last visit, one week ago, only lasted approximately five minutes because Mr. Grillo was not feeling well. There is no question that Mr. Grillo's declining health is directly related to his incarceration and lack of appropriate medical treatment. Dr. El-Bialy explained that Mr. Grillo's medical condition requires him to be closely monitored and seen by Dr. El-Bialy every two weeks, and that Mr. Grillo's medication is often changed weekly. Mr. Grillo's heart conditions require this close monitoring and adjustment of his medication, and it is simply not possible for him to receive that individualized treatment while in custody. This lack of specialized care has caused Mr. Grillo's health to significantly decline, and he struggles with these cardiac symptoms daily while in custody.

///

///

6

## IV.

## THE § 3142(g) FACTORS FAVOR RELEASE

1.  Nature of the Offense

Statutes like the Bail Reform Act are intended, at least in theory, to deny bail to pre-trial detainees only in "extreme cases." This is not one of those cases. This is not a capital case, nor is it a crime of violence. This case also involved an informant who is the target of a fraud investigation, law enforcement observations, wired informants, and intercepted communication. This case involves the alleged attempted kidnapping of a former employee who obtained a large judgment against Mr. Grillo following a trial in Los Angeles Superior Court. It is important to note that Mr. Grillo filed for bankruptcy after the judgement, and since the time of the alleged incident in this case, the bankruptcy court has reached a settlement agreement with the alleged victim, and the Bankruptcy Court has approved payment to her. (See Exhibit D: Order from the Bankruptcy Court approving payment for the settlement) Defense counsel's understanding is that the payment was made to the alleged victim on July 13, 2026.

2.  Weight of the evidence

The weight of evidence against the accused is the least significant factor. *Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).  In the words of one district judge, to presume flight from strong evidence of guilt would be, "tantamount to presumption of guilt." United States v. Gray, 651 F.Supp. 432, 436 (W.D.Ark. 1987), judgment aff'd, 855 F.2d 858 (8th Cir. 1988).  There is no presumption of detention in this case based on the charges, and Mr. Grillo cannot be permanently

detained unless there is a finding that no release condition, "will reasonably assure...the appearance of the person... ."  18 U.S.C. § 3142(g).

Mr. Grillo is a 77 year old man with significant health issues who requires constant communication with his cardiologist. Mr. Grillo also has an expired passport and has not left the country since he was 25 years old. His two daughters and future son in law all live in California and work for the animal rescue. Mr. Grillo's life is in California and his only priorities is fighting this case and taking care of the animals. Even if the Court finds that the weight of the evidence is strong in this case, there are sufficient conditions that the Court can put in place to assure Mr. Grillo's appearance in this matter.

3. History and characteristics

Mr. Grillo is a 77 year old man who has lived in California since 1977. He moved to California to pursue acting, but he soon learned that his real passion is animal rescue. In 1980, Mr. Grillo began rescuing dogs by leasing kennel space and working to find these dogs permanent homes. Many dogs were abused and it was hard to find them homes. Mr. Grillo was unable to find any "no kill" shelters, so he kept these dogs and took care of them himself. Mr. Grillo felt strongly about making sure the dogs went to a "no-kill" shelter, but he was unable to find one for so many animals. By July 1981, Mr. Grillo started "Dedication and Everlasting Love to Animals," which was incorporated as a non-profit organization (aka: D.E.L.T.A. Rescue). Currently, Mr. Grillo operates the animal sanctuary facility that spans 120 acres and provides care for 1,500 animals, including, dogs, cats, horses, and livestock. The organization includes a staff of 33-50 employees, managed by Mr. Grillo. The property is really amazing and has everything required to take care of the animals. The dogs that are housed at the property are not just

8

dogs that were found in a shelter; these are dogs that are found abandoned in the forest and dessert. The property is massive in scale, incredibly clean, has its own fire brigade (See Exhibit E: letter from Gary Marshall from the LA County Fire Department), pond where helicopters can obtain water from to fight fires which can be common in Acton, and a veterinary hospital that includes hospice care for passing animals. This is a very unique property and operation and is the only one of its kind in the United States and the world. Mr. Grillo has operated DELTA Rescue since 1981 and he is the only one uniquely qualified to operate the organization. His custody status has had a negative impact on the animal sanctuary, especially in regards to fundraising. The organization operates solely on donations, and Mr. Grillo the person primarily responsible for bringing in donations, which he has been unable to do while incarcerated. The entire operation relies on Mr. Grillo and the animals will suffer if Mr. Grillo is not able to resume his normal duties to help operate DELTA Rescue.

4. Danger to the community
   a. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
   b. whether, at the time of the current offense or arrest, the person was on probation, on parole or on other release pending trial, sentencing, appeal, or completion of sentence for any offense under Federal, State, or local law

9

Mr. Grillo is a 77 year old man who has no history of violence or erratic behavior. He has a very limited criminal history, consisting of a misdemeanor conviction for a Los Angeles Municipal Code violation relating to a licensing issue concerning the animals from 2004. Nothing in his criminal history indicates he is a danger to the community.

Defense counsel understands that the magistrate judge's concern was regarding Mr. Grillo being a danger to the community. The Court stated it was concerned about Mr. Grillo's access to firearms and resources that could potentially put other witnesses in the criminal case and his civil case at further risk. Since the time of the detention hearing, all of Mr. Grillo's 21 firearms have been transferred to Enclave Armory for storage. (Saee Exhibit F: Letter from Enclave Armory and receipts) The firearms were transferred by Mr. Grillo's daughter who obtained a 30 day power of attorney for the purpose of transferring the weapons. Since the firearms are now in possession of Enclave Armory, they require a court order or approval from ATF or other federal agency in order to relinquish the firearms to Mr. Grillo or any other person. If released on bond, Mr. Grillo will not have access to these weapons. Defense counsel believes that the transfer of the firearms should alleviate any concern the Court had about Mr. Grillo would be a danger to the community if released on bail in this case.

V.

MR. GRILLO SHOULD NOT BE CONSIDERED A FLIGHT RISK

The magistrate judge did state that they were concerned about a risk of flight based on Mr. Grillo's access to funds and his level of sophistication makes it likely that he could evade whatever reasonable conditions that would be imposed. Defense counsel disagrees and does not believe Mr. Grillo should be considered a flight risk. Mr. Grillo is a 77 year old man with very serious heart disease related

diagnoses that regular monitoring by his cardiologist. Mr. Grillo also has an expired passport because he has not left the country since he was 25 years old. Mr. Grillo has no interest in leaving the country; his main priority is fighting this case and taking care of the animals at his rescue sanctuary. Mr. Grillo's only family is his two daughters and future son in law who all live in California and work for DELTA Rescue. The Government and the magistrate state that they believe Mr. Grillo has access to sophisticated means, however, this case involves the use of an encrypted messaging application that every person in the world has access to. This is not ground breaking use of technology. Any person can download the application to communicate. Even if the Court finds that Mr. Grillo used sophisticated means, there is no indication that Mr. Grillo has the knowledge or ability to outsmart a GPS tracking device. If the Court were to set a bail, defense counsel requests that Mr. Grillo be subject to the GPS monitoring location program with the condition that he be on home detention, with the exception of doctors appointment and attorney visits. This should alleviate any concern that Mr. Grillo is a flight risk. If released on bond, Mr. Grillo would reside in his home in Santa Clarita. This location has been analyzed by L.A. Monitoring for suitability in a GPS location monitoring program, and was found suitable. (See Exhibit G: Letter from L.A. Monitoring)

CONCLUSION

The factors in 18 U.S.C. § 3142(g) mandate that Mr. Grillo be given a reasonable bond and be released under the conditions set for in 18 U.S.C. § 3142(c).

In that regard, Mr. Grillo will:

A. Participate in intensive United States Pre-Trial supervision, with electronic monitoring and global position satellite tracking;

11

B.  Maintain employment;

C.  Abide by specific restrictions on personal associations, place of abode, or travel, including any protective orders issued by the Court;

D.  Not have any contact with the alleged victim or cooperating witness in this case;

E.  Report on a regular basis to a designated law enforcement agency, pre-trial services agency, or other agency;

F.  Refrain from possession of a firearm, destructive device, or other dangerous weapon;

G.  Execute an agreement to forfeit upon failing to appear as required, such designated property, as is reasonably necessary to assure the appearance of the person as required, and post with the Court such indicia of ownership of the property or such percentage of the money as the judicial officer may specify.

H.  Execute a bail bond with solvent sureties in such amount as is reasonably necessary to assure the appearance of the person as required;

I.  Satisfy any other condition that is reasonable necessary to assure his appearance and to assure the safety of any other person and the community.

Based on the foregoing, Mr. Grillo is respectfully requesting that the Court set a bond with reasonable conditions to secure his appearance in this matter.

Date: July 16, 2026                                    Respectfully submitted,


                                                        /S/ James E. Blatt
                                                        JAMES E. BLATT
                                                        Attorney for Defendant
                                                        LEO GRILLO