LAW OFFICES OF JAMES E. BLATT
16501 Ventura Boulevard
Suite 400
Encino, California 91436
Telephone: (310) 385-8066
Facsimile: (310) 385-5932
E-mail: J.Blatt@jamesblatt.com

James E. Blatt, Esq. (SBN 56571)
Attorneys for Defendant,
LEO GRILLO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>PLAINTIFF,<br>VS.<br>LEO GRILLO,<br>DEFENDANT | CASE NO. 26-CR-00146-GW<br><br><u>DEFENDANT GRILLO'S RENEWED MOTION TO BE ADMITTED BAIL PENDING TRIAL PURSUANT 18 U.S.C. 3142 ET SEQ.; EXHIBITS</u> |

TO THE HONORABLE MICHAEL B. KAUFMAN, AND TO ASSISTANT UNITED STATES ATTORNEYS HAOXIAOHAN CAI AND KEVIN BUTLER:

COMES NOW the Defendant, Leo Grillo, by and through his undersigned counsel and files this his Motion for Pre-Trial Release and as grounds therefore would show.

This motion is based on the following items: the attached memorandum of points and authorities, the attached Exhibits, any and all filed and records in this

case, and, last, on such additional evidence or argument as may be presented to the court at or before the hearing on this matter.

Date: September 16, 2026 Respectfully submitted,

/S/ James E. Blatt
JAMES E. BLATT
Attorney for Defendant
LEO GRILLO

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Grillo hereby submits the following MEMORANDUM OF POINTS AND AUTHORITIES in support of his motion for release on bond.

I.

INTRODUCTION

The Bail Reform Act strongly favors release under the least restrictive conditions that will reasonably assure appearance and community safety. See 18 U.S.C. § 3142(c). Although Mr. Grillo was previously ordered detained, significantly changed circumstances now justify reconsideration. At the last bail review hearing on July 29, 2026, the Court acknowledged that Mr. Grillo does have significant medical issues that are concerning. The Court expressed concern regarding Mr. Grillo being able to obtain the treatment he requires while in custody. Mr. Grillo has continued to medically suffer since the last hearing, and he is unable to receive the same treatment that is required to treat his conditions in custody that he would be able to receive if he were released on bond. Mr. Grillo addressed the issues concerning flight risk and danger to the community in the last bail motion. As such, this motion will focus solely on the issue of Mr. Grillo's health. Because there are health developments that were unavailable at the original last bail review hearing, reopening is appropriate under § 3142(f).

II.

ARGUMENT

Under 18 U.S.C. § 3142(f)(2)(B):

"The hearing may be reopened...if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release."

If detention was ordered by a magistrate judge, the district court reviews the detention decision de novo under 18 U.S.C. § 3145(b). The Bail Reform Act requires detention only where no condition or combination of conditions can reasonably assure appearance and community safety—not absolute certainty.

## III.

## NEW INFORMATION WARRANTS REOPENING

### A. Defendant's health condition has continued to decline since the last bail hearing

Prior to his arrest in this matter, Mr. Grillo was under the care of his cardiologist, Dr. Adel El-Bialy. (See Exhibit A: Letter from Dr. El-Bialy) Dr. El-Bialy has been Mr. Grillo's cardiologist since 2011 when he suffered a heart attack and underwent placement of a coronary stent in the main artery of his heart. Dr. El-Bialy has managed Mr. Grillo's care since this time. Dr. El-Bialy explained Mr. Grillo's diagnoses, the treatment his conditions require on a daily basis, the decline in Mr. Grillo's health since he has been in custody, and his medical opinion as to the care Mr. Grillo is receiving while in custody.

Dr. El-Bialy explained that Mr. Grillo has the following cardiac diagnoses: (1) Coronary artery disease with stent placement in the main artery of the heart more than 12 years ago; (2) Ischemic cardiomyopathy with congestive heart failure. This means the heart muscle is weakened and does not pump at normal capacity and Mr. Grillo retains fluid and has lower-extremity edema.; (3)

Hypertensive heart disease caused by sustained high blood pressure that caused the heart muscle to thicken to overcome the resistance. Dr. El-Bialy explained that normal left ventricular wall thickness in a man is approximately 10 millimeters, but Mr. Grillo's is approximately 14 millimeters. A thickened ventricular wall makes the electrical activity of the hear unstable and is a risk factor for sudden cardiac death.; (4) Labile hypertension, which is when the blood pressure is unstable and swings unpredictably in both directions. This is among the most difficult forms of hypertension to control. (5) Cardiac arrhythmia, with recurrent episodes of tachycardia producing dizziness and lightheadedness. Mr. Grillo's arrhythmia is driven by three factors – uncontrolled blood pressure, hypertensive heart disease, and a very high level of anxiety. This kind of arrhythmia can occur without warning and can stop the heart.; (6) Hyperlipidemia; and (7) Progressive shortness of breath over recent months.

Prior to his detention, the following was the treatment plan for Mr. Grillo this controlled his arrhythmia sixty to seventy percent of the time: (1) Blood pressure was measured twice a day, and his medication was adjusted in response to the readings; (2) Mr. Grillo was seen in the office every other week, which was much more often than the normal six-month interval that is typical of a cardiology practice. Mr. Grillo was the only patient of Dr. El-Bialy's that was able to come into the office without an appointment because his blood pressure could not be predicted day to day.; (3) Mr. Grillo has direct phone access to Dr. El-Bialy, which he used when symptoms arose so that changes could be addressed immediately.; (4) Mr. Grillo takes metoprolol, which is a beta blocker that helps suppress tachycardia and stabilize electrical activity of the heart; (5) Mr. Grillo is prescribed Valsartan for blood pressure; (6) Mr. Grillo takes Aspirin and a statin for coronary artery disease; (7) Mr. Grillo takes Hydrochlorothiazide, a diuretic, as needed

when he experiences shortness of breath and fluid retention; (8) Mr. Grillo takes daily electrolyte supplementation, including magnesium and potassium, because the diuretic disturbs them and electrolyte disturbance in a patient with Mr. Grillo's arrhythmia is dangerous. Mr. Grillo also received monthly blood testing of his electrolytes to monitor them. (9) Mr. Grillo records his weight daily to detect flid retention; and (10) Mr. Grillo maintains a low salt and low cholesterol diet.

Mr. Grillo's treatment changes regularly depending on what Dr. El-Bialy determines he requires based upon his continued monitoring and observations. Mr. Grillo's treatment is not as simple as writing a prescription. His treatment can change on a weekly and/or daily basis.

Since Mr. Grillo has been in custody, he is not able to receive the following treatment: (1) Mr. Grillo cannot take his electrolyte supplements and he does not receive individualized management of his medication (2) Mr. Grillo's blood pressure is uncontrolled, including a reading of 189/97. (3) Mr. Grillo is experiencing ten to fifteen tachycardia episodes per day, which each require him to lie down with his feet elevated for ten to fifteen minutes until the episode passes; (4) Mr. Grillo has lost 26 pounds; (5) Mr. Grillo has pitting edema, which is a sign of fluid retention in a patient with congestive heart failure; (6) Mr. Grillo is unable to follow a low-salt diet; (7) Mr. Grillo has a bleeding pressure sore at the base of his spine; (8) Mr. Grillo lost vision in his left eye, which should be considered a transient ischemic attack (small stroke) until proven otherwise in a patient with Mr. Grillo's cardiac history.  This is an early warning sign, and if not properly treated, can be followed by a major stroke.

Mr. Grillo's health has significantly deteriorated since he has been in custody since March 2026. Dr. El-Bialy explained that Mr. Grilo is not being treated by a cardiologist while in custody, but rather a physician trained in family

practice. Mr. Grillo's conditions require regular management by a cardiologist who is familiar with his disease. Dr. El-Bialy's medical opinion is that Mr. Grillo cannot receive the level of care that his conditions require at the Metropolitan Detention Cener. Mr. Grillo's condition is life-threatening. Dr. El-Bialy explained that the degree of uncontrolled hypertension Mr. Grillo now has can cause a massive stroke or massive heart attack. Mr. Grillo's hypertensive heart disease and ventricular wall thickening place him at high risk of sudden cardiac death. Dr. El-Bialy stated that based on Mr. Grillo's present circumstances, and without the care he was receiving, it is his opinion that Mr. Grillo is unlikely to survive six more months in custody.

Mr. Grillo is a unique cardiac patient in that he requires much more oversight by his cardiologist than a normal cardiac patient. Mr. Grillo is simply unable to obtain the level of care that is required to maintain his cardiac health while in custody. Mr. Grillo is required to take his blood pressure twice daily, he is required to report these daily blood pressure readings to his cardiologist for medication review, he is required to take his electrolyte supplements daily, he is required to take his weight daily to monitor for fluid retention, he is required to visit with a cardiologist in person every other week, and he is unable to obtain proper nutrition for his cardiac health while in custody. Mr. Grillo has prepared a declaration detailing the ways in which he was able to treat his cardiac conditions prior to his arrest in this matter, and the ways in which his health has deteriorated in the last six months. (See Exhibit B: Declaration of Leo Grillo) Simply administering Valsartan for his blood pressure is not even close to the level of care Mr. Grillo requires for his cardiac health.

///

///

## IV.

## THE § 3142(g) FACTORS FAVOR RELEASE

Defense counsel addressed the § 3142(g) factors in the previous bail motion; however, defense counsel will again address Mr. Grillo's physical and mental condition, which has changed since the previous bail motion. Mr. Grillo is a 77-year-old man who has a history of cardiac issues as detailed above. The Defendant's deteriorating cardiac condition is not collateral to the Bail Reform Act analysis. Congress expressly directed the Court to consider the Defendant's physical condition in determining whether conditions of release can reasonably assure his appearance and the safety of the community.

## V.

## MR. GRILLO'S DETERIORATING HEALTH CONDITION HAS MADE IT IMPOSSIBLE FOR HIM TO ASSIST DEFENSE COUNSEL IN PREPARATION OF HIS CASE

18 U.S.C. § 3142(i) requires a detention order "direct that the person be afforded reasonable opportunity for private consultation with counsel." Unfortunately, Mr. Grillo's tachycardia episodes have increased to the point that he gets them whenever he stands up to move around. When he does get these episodes, he must lie down for ten to fifteen minutes until his heart rate resumes to a normal rhythm. This makes it impossible for him to meet with defense counsel for a meaningful period of time. The Defendant's continued detention has become particularly prejudicial because his cardiac condition has materially deteriorated while in custody. The resulting physical symptoms and limitations have substantially impaired his ability to communicate with counsel, concentrate for

sustained periods, review discovery, recall and organize relevant facts, and make the decisions necessary to assist counsel in preparing his defense. This is not a case in which Mr. Grillo relies upon a generalized assertion that incarceration is uncomfortable or that he would prefer to prepare his defense outside of custody. Rather, Mr. Grillo's cardiac condition deteriorated significantly in the last six months, that it has materially affected his physical functioning and his ability to sustain the concentration and communication necessary for meaningful attorney-client consultation. Defense counsel's last two meetings with Mr. Grillo have been very short because the movement to the location where the attorney-client meeting takes place is enough for him to develop a tachycardia episode. Once that develops, Mr. Grillo is unable to continue to meet with defense counsel as he must lie down so that his heart can resume a normal rhythm. It would be life threatening for Mr. Grillo not to treat every tachycardia episode in the moment of onset or as soon as possible. Treatment requires him to lie down, which is not possible in the attorney-client meeting location. His continued incarceration under these circumstances will make it impossible for defense counsel to prepare this case for trial.

## CONCLUSION

The factors in 18 U.S.C. § 3142(g) mandate that Mr. Grillo be given a reasonable bond and be released under the conditions set for in 18 U.S.C. § 3142(c).

In that regard, Mr. Grillo will:

A. Participate in intensive United States Pre-Trial supervision, with electronic monitoring and global position satellite tracking;
B. Maintain employment;

C. Abide by specific restrictions on personal associations, place of abode, or travel, including any protective orders issued by the Court;

D. Not have any contact with the alleged victim or cooperating witness in this case;

E. Report on a regular basis to a designated law enforcement agency, pre-trial services agency, or other agency;

F. Refrain from possession of a firearm, destructive device, or other dangerous weapon;

G. Execute an agreement to forfeit upon failing to appear as required, such designated property, as is reasonably necessary to assure the appearance of the person as required, and post with the Court such indicia of ownership of the property or such percentage of the money as the judicial officer may specify.

H. Execute a bail bond with solvent sureties in such amount as is reasonably necessary to assure the appearance of the person as required;

I. Satisfy any other condition that is reasonable necessary to assure his appearance and to assure the safety of any other person and the community.

Based on the foregoing, Mr. Grillo is respectfully requesting that the Court set a bond with reasonable conditions to secure his appearance in this matter.

Date: September 16, 2026 Respectfully submitted,

/S/ James E. Blatt
JAMES E. BLATT
Attorney for Defendant
LEO GRILLO